**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN THE MATTER OF LOUISIANA**        **CIVIL ACTION**
**SWAMP TOURS, L.L.C. AS THE**
**OWNER OF THE AIR BOAT,**        **NO:  04-2786**
**SWAMP KING, PRAYING FOR**
**EXONERATION FROM OR**        **SECTION: "S" (3)**
**LIMITATION OF LIABILITY**

<u>**ORDER AND REASONS**</u>

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by certain

limitation claimants[1] (Document 93) is **DENIED.**  The Motion for Summary and/or Declaratory

Judgment filed by Brothers Property Management Corporation (Document 26) is **DENIED.**

**A.**    **Background.**

    **1.**    **Facts surrounding the *Swamp King*'s October 2, 2004 accident.**

On October 2, 2004, the airboat *Swamp King*, owned and operated by Louisiana Swamp

Tours, L.L.C., (LST) capsized in Lake Salvador, Louisiana, killing two of its passengers and

---

[1]    Christian Wagner, Lily Li-Li Chow, Mei Huei Chung, Laura Gaffney, Chi Wei
Ho, Sahan-Fong Ho, Tai Chen Ho, Michelle Olsen, Erin Stockhausen, Allyson Terry, Kimberly
Valentine, Steve Whelan, Kan-Kaw Adam Woo, Myra Chason, Jessica Marx, and Tracy Rust.

injuring others.  In this action LST seeks to limit its liability to the value of the *Swamp King* and its freight pursuant to 46 U.S.C.App. § 181 *et seq.*, the Limited Liability Act.  The issue in claimants' motion is whether they are entitled to summary judgment that LST's liability may not be limited under the Act.  The issue in Brothers' motion is whether Brothers, which owns and operates Le Pavillon Hotel and has been sued in a state court lawsuit by certain personal injury claimants, is entitled to summary judgment on its alleged liability to those claimants.

LST purchased the *Swamp King* from Ronnie's Airboats and Fabrication on April 17, 2003.  The vessel has three bench seats capable of seating five passengers, and one bucket seat on each side of the operator's station.  The vessel is steered by a "teleflex cable" system, which permits the vessel to turn by moving its stick forward (which turns the vessel to the right) or backwards (which turns the vessel towards the left).  The teleflex cable system incorporates steel cables encased in a plastic sheath.  Prior to October 2, 2004, none of the captains who piloted the *Swamp King* reported significant problems with the steering system, although LST Captain Michael L. Wilson indicated at his deposition that some time prior to the incident, the steering stick on the vessel had become momentarily stuck.

Ronnie's Airboats supplied the *Swamp King* to LST without safety belts for the vessel's seats.  LST obtained belts from an automotive parts retail outlet and installed them itself.  One belt secured the two outside individuals sitting on the bench seats, while another secured the middle passenger on the benches.  Additionally, one belt secured each passenger in the two bucket seats alongside the operator of the vessel.  There are no maritime regulations either requiring or prohibiting the installation of such belts.  Ronald J. Thibodaux, a principal of Ronnie's Airboats, discussed the seat belts with Milton Walker, LST's sole shareholder and

manager, and told Walker that he believed that the belts were dangerous and would lead to injuries if the vessel were to capsize.  Both LST's expert, Lawrence Hitter, and claimant's expert, Arthur Sargent, have opined that the belts were dangerous to use in the airboat.[2]  However, the vessel was inspected by the Coast Guard prior to the incident, and no one was told to remove the belts.  Additionally, LST employee Todd Vinet testified that he asked Coast Guard about the safety belts and was told that there was no objection to their use.

The facts surrounding LST's maintenance program for its airboats are disputed.  Walker testified at his deposition that he and LST's captains performed routine maintenance.  Captain Michael L. Wilson testified that this maintenance consisted primarily of changing the oil, greasing the bushings for the rudders, checking the cables and batteries, and washing the boats.[3] Walker has also submitted an affidavit attesting:

> That at all times pertinent hereto, Louisiana Swamp Tours, L.L.C.[] had safety and maintenance programs which included, among other things, a requirement that the airboat captains check the steering gear of their airboats prior to each tour and report any problems to either Mr. Walker or Todd Vinet;
>
> That Louisiana Swamp Tours, L.L.C.'s safety program also required captains to notify Mr. Walker or Mr. Vinet immediately of any problems with the airboats, including the steering ger, regardless of when those problems manifested themselves; [and]
>
> That Louisiana Swamp Tours, L.L.C.'s safety program also required that if a captain reported *any* problem with an airboat, including a steering-related problem, the vessel would be taken out of service, problem would be checked, and any necessary repairs would be made before the vessel was returned to service.[4]

Additionally, an individual named George Zar would perform internal engine repairs and replace

---

[2]     Sargent also opined that LST was negligent in failing to orient passengers on the *Swamp King* regarding the use of the belts.

[3]     Exhibit G to Document 93 at pp. 32-33.

[4]     Exhibit 3 to Document 100 (italics in original).

cables for LST as needed.[5]  Claimants' expert, Arthur Sargent, has opined that these procedures were inadequate, and that a proper maintenance program would have discovered the wrongly positioned locking collar that Hitter believes caused the accident.

The circumstances of the accident are in dispute.  It is uncontested that the vessel left port at 4:15 p.m. on its third and final scheduled swamp tour of the day.  In a statement given after the incident, Captain Curtis Silver, who has not been deposed because of the possibility of criminal charges being filed, stated that prior to departing, he "inspected the *Swamp King*'s seat belts, engine, and rudders," and that the vessel "appeared to be in good condition."  Captain Silver stated that the vessel was proceeding at a speed of 18 to 20 miles per hour, and as he was coming out of a turn, the rudders became stuck to starboard, causing the boat to capsize.[6]  This statement is contradicted by certain of the vessel's passengers, who stated in discovery that "The vessel captain capsized the vessel while performing dare-devil maneuvers in the swamp consisting of 360 degree and 180 degree turns of the airboat."[7]

The personal injury claimants allege that one cause of the accident was the fact that at the time the vessel capsized Captain Silver was causing it to engage in 180-degree spins and other sharp maneuvers at high speeds.  Walker testified that in approximately mid-September 2004, he informed his captains that they were prohibited from performing 180-degree turns in their airboats, and were only permitted to do 90-degree "slide" turns in specified shallow areas.

_____

[5]        Exhibit A to Document 93 at pp. 124-25.

[6]        Captain Silver's statement is Exhibit D to Document 93.

[7]        *See* Exhibit 2 to Document 100 at p. 10; *see also* Sargent's affidavit at p. 3 (stating that "it is my opinion that the *M/V Swamp King* capsized because it was being spun rapidly by the operator when carrying almost a full load of passengers.").

Although Captain Silver was not present at this meeting, Todd Vinet testified that he informed Silver of these new procedures.[8]  Thibodaux also testified at his deposition that his airboats were not designed to perform 180-degree spins.

   The vessel was inspected several times after the accident.  Hitter has opined that the port locking collar on the stabilizer rod attached to the steering lever was misaligned and "off to the middle," and this caused a jam of the steering cables resulting in the vessel capsizing.  Hitter testified at his deposition that this condition was apparent and open, and he noticed it immediately upon inspecting the steering mechanism because he had seen misaligned collars before.  Walker has submitted an affidavit indicating that LST did not modify the locking collar after the air boat's delivery.

   On the date of the accident, the *Swamp King* held a valid Certificate of Inspection from the Coast Guard, and was in compliance with its Certificate.  Captain Silver was the master of the vessel, and he held a 100-ton master's license from the Coast Guard.

   **2.     Procedural history.**

         **a.     The personal injury lawsuit:  *Christian Wagner, et al. v. Ronnie's Airboat and Fabrication , L.L.C., et al.***

   In November 2004, the individuals injured in the *Swamp King*'s accident and the representatives of the decedents filed a lawsuit seeking compensation for their personal injuries in the Civil District Court for the Parish of Orleans, State of Louisiana (the "personal injury lawsuit").[9]  One group of plaintiffs in the personal injury lawsuit sued Brothers Property

---

   [8]      Exhibit 3 to Document 100 at p. 134.

   [9]      *Christian Wagner, et al. v. Ronnie's Airboat and Fabrication , L.L.C., et al.*, Docket No. 2004-16666.

Management Corporation, which operates Le Pavillon Hotel, alleging that the hotel concierge "insisted" that they use LST when they asked about a swamp tour, and arranged for transportation to the tour embarkation point. Additionally, these plaintiffs alleged that the Le Pavillon hotel concierge received monetary compensation from LST for arranging the tour.[10]

Defendants removed the personal injury lawsuit to federal court, alleging that federal jurisdiction existed based on 28 U.S.C. §§ 1331 and 1333.[11] The court remanded the personal injury lawsuit to state court on April 7, 2005, finding that the record did not contain proof that all served defendants had consented to removal.[12]

### b.    The limitation proceeding:  *In re Louisiana Swamp Tours, L.L.C.*

LST instituted this limitation proceeding on October 12, 2004. Among the claimants to the limitation fund are the personal injury claimants, Captain Silver, and Brothers. Brothers has moved for summary judgment, arguing that under Louisiana law it had no duty to warn the personal injury plaintiffs of the risk of injury by riding in a swamp boat, and further arguing that LST would be liable to it for indemnity in the event it is found liable in state court to the personal injury plaintiffs. In addition to Brothers' motion, the personal injury claimants have moved for summary judgment, arguing that LST is not entitled to limitation as a matter of law.

### B.    Analysis.

---

[10]    The remaining defendants to the personal injury lawsuit are Ronnie's Airboat and Fabrication, L.L.C., Alert Transportation, L.L.C., Hyatt Corporation, Indiana Mills & Manufacturing, Inc., and Walker. The plaintiffs in the personal injury lawsuit did not name LST as a defendant.

[11]    *See* "Notice of Removal" (Document 1), *Wagner, et al. v. Ronnie's Airboat, et al.*, E.D. La. Docket No. 05-13.

[12]    "Order and Reasons" entered April 7, 2005 (Document 37), Docket No. 05-13.

1.      **Summary judgment standards.**

Rule 56 provides that summary judgment "shall be rendered forthwith" if the pleadings and evidence demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to prevent summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  The inferences the court may draw from the underlying facts in the affidavits, depositions, and exhibits "must be viewed in the light most favorable to the party opposing the motion."  *McAvey v. Lee*, 260 F.3d 359, 363 (5th Cir. 2001) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L.Ed.2d 176 (1962)).  Additionally, when "the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions."  *Geosouthern Energy Corp. v. Chesapeake Operating, Inc.*, 274 F.3d 1017, 1020 (5th Cir. 2001), *cert. denied*, 537 U.S. 814, 123 S.Ct. 75, 154 L.Ed.2d 17 (2002).

2.      **The personal injury claimants' motion (Document 93).**

The Limited Liability Act, 46 U.S.C.App. 181 *et seq.*, permits a vessel owner to limit its liability for damage or injury to the value of the vessel or the owner's interest in the vessel:

> The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person or any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest

of such owner in such vessel, and her freight then pending.

*Id.* at § 183(a).  Under the Act, a claimant must first establish negligence or unseaworthiness, and the burden then shifts to the owner of the vessel to prove that the negligence or unseaworthy condition was not within its privity or knowledge:

> The Limited Liability Act allows a vessel owner to limit its liability for any loss or injury caused by the vessel to the value of the vessel and its freight.  "Under the Act, a party is entitled to limitation only if it is 'without privity or knowledge' of the cause of the loss." If the shipowner is a corporation, "knowledge is judged by what the corporation's managing agents knew or should have known with respect to the conditions or actions likely to cause the loss."  Once the claimant establishes negligence or unseaworthiness, the burden shifts to the owner of the vessel to prove that negligence was not within the owner's privity or knowledge.

*In re Hellenic, Inc.*, 252 F.3d 391, 394 (5th Cir. 2001).  The phrase "privity or knowledge" is not defined in the Act.  The Fifth Circuit has held that privity or knowledge "must turn on the facts of the individual case."  *Id.* at 395.  A shipowner "has privity if he personally participated in the negligent conduct or brought about the unseaworthy condition."  *Trico Marine Assets, Inc. v. Diamond B Marine Serv., Inc.*, 332 F.3d 779, 789 (5th Cir. 2003).  "[T]he knowledge of a seagoing vessel's master at the commencement of the voyage is imputed to the vessel's owner." *Id.* at 790.  However, "a master's navigational errors at sea are generally not attributable to the owner.  When the owner is so far removed from the vessel that he can exert no control over the master's conduct, he should not be held to the master's negligence.  In such cases, the owner may rely on the master's skill and expertise."  *Hellenic*, 252 F.3d at 396; *see also Matter of Kristie Leigh Enterprises, Inc.*, 72 F.3d 479, 482 (5th Cir. 1996) (stating that an employee's "negligence at sea, without more, is not enough to deny limitation," and recognizing the "well established rule" that the owner "may rely on the navigational expertise of a competent ship's master").

Claimants argue that LST was negligent in failing to maintain an adequate safety and

maintenance program, installing seat belts on the *Swamp King*, inadequately training its captains, and failing to provide proper safety orientation to the passengers.  Additionally, claimants argue that the *Swamp King* was unseaworthy because of its allegedly defective steering rudder and seat belt installation.  The court finds that disputed issues of material fact prevent summary judgment on each of these claims.

Additionally, the court must determine the cause of the accident before it addresses LST's privity or knowledge.  The privity or knowledge requirement focuses on whether a cause of the accident was a negligent act or unseaworthy condition that was within the privity or knowledge of LST.  This analysis cannot be performed before determining the specific acts of negligence or unseaworthy conditions that caused the accident. Accordingly, because the court finds that disputed issues of material fact exist regarding the cause or causes of the accident, it does not reach the issue of whether any such acts of negligence or unseaworthy conditions were within the privity or knowledge of LST.

### 3.    Brothers' Motion (Document 26).

Brothers argues that under Louisiana law it had no duty to warn the individuals who took the swamp tour of the possible dangers of the tour, nor did it have a duty to protect them from harm.  Alternatively, it argues that LST owes it indemnity in the event it is found liable to any of the personal injury claimants.  LST and the personal injury claimants argue that the court lacks federal jurisdiction to decide these claims.

In general, the purpose of a limitation proceeding is to allow all actions against a shipowner to be consolidated in a single action:

> The procedure provided for in §185 is known as a "concursus," and the purpose behind such a proceeding in federal court is to permit all actions against the shipowner to

be consolidated into a single case so that all claims may be disposed of simultaneously: "When a shipowner files a federal limitation action, the limitation court stays all related claims against the shipowner pending in any forum, and requires all claimants to timely assert their claims in the limitation court."  "The court takes jurisdiction to entertain those claims without a jury and ensures that the shipowner who is entitled to limitation is not held to liability in excess of the amount ultimately fixed in the limitation suit (the limitation fund)."  As the Supreme Court explained:

> [In essence, the §185 proceeding] is the administration of equity in an admiralty court . . . .  [The proceeding] looks to a complete and just disposition of a many cornered controversy, and is applicable to proceedings in rem against the ship as well as to proceedings in personam against the owner, the limitation extending to the owner's property as well as to his person.

*Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 264 (5th Cir. 2001).

The limitation concursus "compels all actions arising out of the casualty to be filed and disposed of in a single proceeding," and "[l]iberal rules of joinder are applied in limitation proceeding, allowing the court to adjudicate the claims and cross-claims of all interests."  2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15-5, at 149 (4th ed. 2004).  The United States Supreme Court has held that in a limitation concursus, federal courts possess jurisdiction to entertain cross-claims asserted by and between claimants to the limitation fund.  *See British Transport Comm'n v. United States*, 354 U.S. 129, 138, 77 S.Ct. 1103, 1 L.Ed.2d 1234 (1957).[13]

Although the court possesses jurisdiction to decide Brothers' motion, the court finds that Brothers' motion should be decided in the personal injury lawsuit now pending in state court. Brothers has not filed a cross-claim for declaratory judgment against the individuals asserting

---

[13]      *See also Petition of Ashland Oil, Inc.*, 557 F. Supp. 862, 870-72 (E.D. Ky. 1983) (holding that cross-claims may be asserted amongst land-based limitation claimants regardless of whether there is an independent basis for federal jurisdiction over the cross-claims); *Petition of Kenneth C. McAninch*, 392 F. Supp. 96, 97 (S.D. Tex. 1975) (holding that limitation petitioner may implead third parties who might be liable to it); *Petition of Sandra & Dennis Fishing Corp.*, 227 F. Supp. 620, 622 (D. Mass. 1964) (holding that limitation claimant may implead third parties who have not filed claims against the limitation fund).

10

claims against it in state court, and Brothers' motion essentially asserts such a claim.  The court

declines to decide this issue.  "In the declaratory judgment context, the normal principle that

federal courts should adjudicate claims within their jurisdiction yields to considerations of

practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115

S.Ct. 2137, 132 L.Ed.2d 214 (1995).  The Fifth Circuit has adopted a three-factor test for district

courts to use in determining whether to adjudicate a declaratory judgment action, requiring

consideration of (1) whether the action is justiciable, (2) whether the court has the authority to

grant declaratory relief, and (3) whether the court should exercise its discretion to decide the

action.  *Orix Credit Alliance, Inc. v Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).  Although the

claim between Brothers and the personal injury claimants is justiciable, the other two factors

clearly indicate we should not consider Brothers' declaratory judgment claim.  The Fifth Circuit

has held that a district court does not have the authority to grant declaratory relief if a declaratory

defendant has previously filed a cause of action in state court, the state case involves the same

issues as those in the federal case, and the district court cannot enjoin the state proceeding.

*Travelers Ins. Co. v. La. Farm Bureau Fed'n*, 996 F.2d 774, 776 (5th Cir. 1993).  Each of these

factors is met.  Additionally, in determining whether to exercise its discretion, a court must

consider:

> 1) whether there is a pending state action in which all of the matters in controversy may
> be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the
> defendant, 3) whether the plaintiff engaged in forum shopping in bring the suit, 4) what
> possible inequities in allowing the declaratory plaintiff to gain precedence in time or to
> change forums exist, 5) whether the federal court is a convenient forum for the parties
> and witnesses, . . . 6) whether retaining the lawsuit in federal court would serve the
> purposes of judicial economy, . . . and 7) whether the federal court is being called on to
> construe a state judicial decree involving the same parties and entered by the court before
> whom the parallel state suit between the same parties is pending.

11

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).  On balance, these factors weigh against exercising jurisdiction.  Accordingly, Brothers' motion is denied.

**C.      Conclusion.**

The Motion for Summary Judgment filed by the limitation claimants is denied.  The Motion for Summary and/or Declaratory Judgment filed by Brothers Property Management Corporation is denied.

New Orleans, Louisiana this  _21st_ day of March, 2006.

_Mary Ann Vial Lemmon_
**Mary Ann Vial Lemmon**
**United States District Judge**

12